UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALFREDO PARADA CALDERON (A-092-078-794),

Petitioner,

v.

CHRISTOPHER CHESTNUT, et al.,

Respondents.

No. 1:26-cv-02552-TLN-CSK

ORDER AND FINDINGS & RECOMMENDATIONS

Petitioner Alfredo Parada Calderon (A-092-078-794), a native and citizen of El Salvador, filed a second verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] In approximately 1979, petitioner entered the United States when he was around six years old. In October 2023, petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") officials. ICE initiated removal proceedings against petitioner based on his criminal convictions. This habeas action concerns petitioner's detention. For the reasons that follow, the Court recommends that the motion to dismiss be denied and petition for writ of habeas corpus be granted.

///

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

## I. FACTUAL BACKGROUND

In approximately 1979, petitioner entered the United States when he was around six years old. (ECF No. 1-4 at 2.) He became a lawful permanent resident in 1990. (ECF No. 1 at 6.) On April 29, 1992, petitioner was convicted of one count of murder and three counts of attempted murder in violation of California Penal Code §§ 187(a) and 664. (ECF No. 1-10 at 6.) Petitioner, who was sixteen years old when he committed the crimes, was tried as an adult and sentenced to 34 years and 8 months to life in prison for these offenses. (ECF No. 1 at 8.)

In April 2023, the California Board of Parole Hearings granted him parole after being confined for 33 years. (Id. at 9.) In October 2023, upon the completion of his state criminal sentence, petitioner was transferred directly to ICE custody. (Id.)

On October 5, 2023, ICE issued a Notice to Appear charging petitioner with removability under (1) Immigration and Nationality Act ("INA") section 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as having been convicted of "an aggravated felony as defined in INA section 101(a)(43)(A), 8 U.S.C. § 1101(a)(43)(A), a law relating to murder, and a conviction for an aggravated felony based on an attempted under § 1101(a)(43)(U). (Id. at 10.)

On February 7, 2024, the immigration judge denied petitioner's application for deferral of removal under the Convention Against Torture ("CAT") and ordered petitioner's removal to El Salvador. (ECF No. 1-10.) On June 20, 2024, the Board of Immigration Appeals ("BIA") granted petitioner's appeal after finding the immigration judge erred, and remanded to the immigration judge to make additional findings of fact. (ECF No. at 1-11.) On June 27, 2024, the immigration judge issued a new decision again denying petitioner's application for relief and ordering him removed to El Salvador. (ECF No. 1-12.) On November 22, 2024, the BIA dismissed petitioner's second appeal. (ECF No. 1-13.) Petitioner filed a timely petition for review of the BIA's November 22, 2024 decision, which remains pending before the Ninth Circuit Court of Appeals. (See ECF No. 1-17.) Petitioner filed a motion for stay of removal, which the government did not oppose, and the Ninth Circuit issued an ordering continuing the temporary stay of removal until the mandate issues or unless the Ninth Circuit orders otherwise. (ECF No. 1-16.)

Separately, petitioner filed a motion to reopen removal proceedings before the BIA, and on March 28, 2025, the BIA denied his motion to reopen. (ECF No. 1-14.) Petitioner also filed a timely petition for review of the BIA's March 28, 2025 denial of reopening, and his petitions were consolidated before the Ninth Circuit. (ECF No. 1-17 at 16.)

On August 28, 2026, the Ninth Circuit held that the BIA erred in denying Parada's motion to reopen, granting Parada's petition to review the BIA's denial of his motion to reopen, and remanding to the BIA with instructions to grant Parada's motion to reopen and to conduct a full merits hearing on petitioner's CAT application.[2] Parada Calderon v. Blanche, --- F.4th ----, 2026 WL 2543389 (9th Cir. Aug. 28, 2026). The Ninth Circuit held:

> The BIA committed two clear legal errors in its denial of Parada's motion to reopen. First, in line with a growing and troubling trend across the Nation, the BIA held that, to obtain [Convention Against Torture] protection, a petitioner must produce 'quantitative evidence' and that, without such evidence, Parada could not meet his burden of showing that he was entitled to CAT protection. Those misstatements of law demonstrate a fundamental misunderstanding of CAT's implementing regulations, which expressly require the BIA to consider 'all evidence relevant to the possibility of future torture' in adjudicating a noncitizen's CAT application. See 8 C.F.R. § 1208.16(c)(3). The BIA's disregard of the unambiguous language of the regulations imposed a nearly insurmountable burden on Parada by requiring him to produce statistics of torture in El Salvador that likely do not exist or, if any do exist, are likely unreliable. Second, the BIA erred by failing to give reasoned consideration to Parada's expert reports. See Cole v. Holder, 659 F.3d 762, 772 (9th Cir. 2011). Under the correct legal standards, the record evidence compels the conclusion that Parada met the burden of showing that he has a 'reasonable likelihood of [succeeding] on the merits' of his application in a reopened proceeding. See Fonseca Fonseca v. Garland, 76 F.4th 1176, 1181 (9th Cir. 2023) (citation modified).")

2026 WL 2543389, at *2 (internal reference omitted). The Ninth Circuit also granted Parada's motion to stay removal pending issuance of the mandate. 2026 WL 2543389, at *15 n.18.

///

///

[2] The Court appreciates petitioner's counsel's prompt notification of this development in petitioner's Ninth Circuit appeal. (See ECF No. 16.)

## II. PROCEDURAL BACKGROUND

On October 7, 2024, petitioner filed his first petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the Western District of Washington, challenging his detention. (ECF No. 12 at 3.) Petitioner was detained at the Northwest ICE Processing Center in Tacoma, Washington when he filed his first habeas petition.[3] (Id. at 4.) The Western District of Washington district court granted his first petition and ordered a bond hearing before an immigration judge where the government bears the burden of proof to show that petitioner is a danger or flight risk by clear and convincing evidence. Parada Calderon v. Bostock, No. 2:24-CV-01619-MJP-GJL, 2025 WL 879718, at *3 (W.D. Wash. Mar. 21, 2025) ("Parada Calderon I"). On April 29, 2025, the immigration judge held a bond hearing and denied petitioner bond. (ECF No. 1 at 14; ECF No. 1-7 at 2.) On September 19, 2025, the BIA denied petitioner's bond appeal. (ECF No. 1 at 14; ECF No. 1-19.)

On April 4, 2026, petitioner filed the instant habeas petition in this district, his second habeas petition, challenging his continued detention. (ECF No. 1.) Petitioner is currently detained at the California City Detention Facility in California City, California. (Id. at 5.) On April 6, 2026, the district judge referred the matter to the assigned magistrate judge for all further proceedings. (ECF No. 5.) On April 14, 2026, respondents timely filed a consolidated motion to dismiss and answer. (ECF No. 7.) On April 21, 2026, petitioner filed a consolidated opposition to the motion to dismiss and traverse. (ECF No. 8.) Respondents did not file a reply. (See Docket.) On July 1, 2026, petitioner filed a statement of supplemental authority. (ECF No. 9.) On July 12, 2026, petitioner filed a copy of his first habeas petition in response to the Court's minute order. (ECF No 12.) Petitioner has filed multiple statements of supplemental authority

---

[3] Shortly after his petition was filed in the Western District of Washington, at petitioner's counsel's request, petitioner was transferred back to the Golden State Annex ICE detention facility, which is located in the Eastern District of California. Calderon v. Bostock, No. 2:24-CV-01619-MJP-GJL, 2025 WL 1047578, at *2 (W.D. Wash. Jan. 17, 2025), report and recommendation adopted in part, rejected in part, 2025 WL 879718 (W.D. Wash. Mar. 21, 2025). The Western District of Washington district court denied the government's request to transfer the case to the Eastern District of California where transfer would frustrate the interest of justice by further delaying resolution. Id. at *3.

and also recently filed a motion for the district judge to retain jurisdiction over the petitions. (ECF Nos. 14-19.) Respondents have not responded to any of petitioner's statements of supplemental authority. (See Docket.)

**III. LEGAL STANDARD**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

Habeas corpus petitions are subject to summary dismissal pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court. The provisions of Rule 4, which are applicable to a petition filed pursuant to 28 U.S.C. § 2241, provide in pertinent part: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must not dismiss the petition and direct the clerk to notify the petitioner." The Advisory Committee Notes to Rule 4 indicate that the court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to respondents' motion to dismiss, or after an answer to the petition has been filed.

**IV. DISCUSSION**

Petitioner challenges his continued detention based on the violation of the substantive due process clause of the Fifth Amendment. Petitioner does not dispute that he is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(B), as he is deportable for being convicted of an aggravated felony defined by 8 U.S.C. §§ 1101(a)(43)(A, (U). (See ECF Nos. 1, 7; ECF No. 2 at 3.)

### A. Successive Petition

Respondents contend the Court should dismiss petitioner's instant petition as successive or under the abuse of writ doctrine for raising the same issues that were conclusively decided or could have been decided in his first habeas petition filed in the Western District of Washington on October 7, 2024. (ECF No. 7 at 2.) Respondents assert petitioner requests the same ultimate relief in his instant petition as in his first petition, where he also raised a due process claim but now focuses on the alleged punitive nature of his continued detention. (Id.) Petitioner counters that his first petition raised only a procedural due process violation based on his detention without a bond hearing and he now requests release based on a violation of substantive due process. (ECF No. 8 at 6-7.)

There is no statutory prohibition on second or successive habeas corpus petitions filed pursuant to 28 U.S.C. 2241. Compare 28 U.S.C. § 2255(e); 28 U.S.C. § 2244(a), (b). However, the Ninth Circuit has recognized that the common law doctrine of the abuse of the writ doctrine may apply to successive habeas petitions challenging immigration detention filed pursuant to § 2241. See Alaimalo v. United States, 645 F.3d 1042, 1049 (9th Cir. 2011). The government bears the burden in pleading abuse of the writ. See id. The doctrine bars only successive petitions that raise claims "identical" to those in the prior petition. Eldridge v. Howard, 70 F.4th 543, 551 (9th Cir. 2023). The doctrine reaches only those claims a petitioner had a full and fair opportunity to raise earlier. Id. at 552. A petitioner has no such opportunity where "[1] the claim was not yet ripe at the time of the first petition, or [2] where the alleged violation occurred only after the denial of the first petition." Id. (internal citation omitted).

Though the first petition does not specify whether the due process claim is a substantive or procedural claim where it arguably refers to both, see Calderon I, No. 2:24-CV-01619-MJP-GJL, Petition (ECF No. 1 at 21), the Court is not persuaded that the abuse of writ doctrine bars the Court's consideration of the instant petition. Many decisions addressing § 1226(c) prolonged detention claims also do not specify whether the claim is a procedural or substantive due process claim, in part because it is not often clear, the petition raises both, and courts have recognized that the "procedural and substantive due process inquiries overlap." See Black v. Decker, 103 F.4th

133, 142 n.12 (2d Cir. 2024) (though petitioner raised procedural and substantive due process claims, declining to separately address substantive due process because "procedural and substantive due process inquiries overlap" and only an academic distinction between remedies existed); see also Demore v. Kim, 538 U.S. 510, 532 (2003) (Kennedy, J., concurring) (referring to procedural and substantive due process together by describing the procedure required (individualized determination of flight risk and danger) if continued detention pursuant to § 1226(c) becomes unreasonable or unjustified). Further, petitioner now focuses his due process claim on his argument that his prolonged detention is unreasonable because it is excessive in duration and scope in relation to the government's interest where he has now been detained for over 2.5 years since October 2023, including more than fourteen months after his April 2025 bond hearing. (See ECF No. 1 at 37-38.) Therefore, while the Court acknowledges that there is some overlap between petitioner's first and second petitions, the abuse of writ doctrine does not bar the court's consideration of the instant petition. The Court will therefore turn to the merits of the petition.

**B. Due Process Claim**

In analyzing petitioner's challenge to his detention, the court "must first identify the statutory provision that purports to confer" authority for his detention. Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). The parties do not dispute that petitioner is detained pursuant to 8 U.S.C. § 1226(c)(1)(B) as he is deportable for being convicted of an aggravated felony defined by 8 U.S.C. §§ 1101(a)(43)(A, (U). (See ECF No. 1; ECF No. 2 at 3.) Pursuant to § 1226(c), "detention is mandatory, and a noncitizen of the United States . . . therefore is not statutorily entitled to a bond hearing." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023); see 8 U.S.C. § 1226(c)(1); Jennings v. Rodriguez, 583 U.S. 281, 303 (2018).

While the Supreme Court has rejected a substantive due process facial challenge to mandatory detention under § 1226(c) in Demore v. Kim, 538 U.S. 510 (2003), an as applied challenge is not foreclosed. Justice Kennedy's concurring opinion in Demore specifically noted that "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as [Kim] could be entitled to an individualized determination as to his risk of

flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532.

Many courts, including this district court and multiple circuit courts, have held that unreasonably prolonged detention pursuant to § 1226(c) without a bond hearing can violate due process. See Reid v. Donelan, 17 F.4th 1, 7 (1st Cir. 2021); Black v. Decker, 103 F.4th 133, 138 (2d Cir. 2024) ("conclud[ing] that a noncitizen's constitutional right to due process precludes his unreasonably prolonged detention under section 1226(c) without a bond hearing"); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 209-10 (3d Cir. 2020) (holding that after Demore and Jennings, petitioners detained pursuant to § 1226(c) can still bring as-applied challenges to their detention and that due process affords them a bond hearing once detention becomes unreasonable); Keo v. Chestnut, No. 1:26-cv-1192 DJC CSK, 2026 WL 747117, at *2 (E.D. Cal. Mar. 17, 2026); Loba L.M. v. Andrews, et al., No. 1:25-cv-00611-JLT-SAB, 2025 WL 2939178, at *5 (E.D. Cal. Oct. 16, 2025), report and recommendation adopted, 2025 WL 3187577 (E.D. Cal. Nov. 14, 2025); Martinez v. Clark, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *7 (W.D. Wash. May 23, 2019), report and recommendation adopted, No. 18-CV-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019). "[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" Martinez, 2019 WL 5968089, at *6 (quoting Sajous v. Decker, No. 18-2447, 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018)).

In petitioner's first habeas petition, the Western District of Washington district court held that petitioner's prolonged mandatory detention violated due process, granted petitioner relief, and ordered a bond hearing where the government bears the burden of proof to show that petitioner is a danger or flight risk by clear and convincing evidence. Calderon I, 2025 WL 879718, at *3. A month later, petitioner received a bond hearing before an immigration judge on April 29, 2025, and bond was denied. The BIA subsequently denied petitioner's appeal of the denial of bond.

In this second habeas petition, petitioner does not challenge the bond hearing or the BIA's

denial of his bond appeal, and petitioner does not request a second bond hearing. (See ECF No. 1.) Instead, petitioner seeks immediate release based on his argument that his prolonged detention violates substantive due process because his detention is excessive in duration and scope in relation to the government's interest where he has now been detained since October 2023, including more than seventeen months after his April 2025 bond hearing. (See ECF No. 1 at 37-38.) This as applied challenge is not foreclosed by Demore v. Kim, as described above.

As other district courts have noted, there is currently no Ninth Circuit or Supreme Court guidance regarding when and under what conditions an individual's continued mandatory detention under § 1226(c) becomes unconstitutional. See Lopez v. Garland, 631 F. Supp. 3d 870, 876 (E.D. Cal. 2022); see Mkrtich M. v. Warden of Golden State Annex Detention Facility, No. 1:26-cv-0194-TLN-JDP, 2026 WL 482744 (E.D. Cal. Feb. 20, 2026). Most of the due process challenges to continued or prolonged § 1226(c) detention are in cases where the petitioner has not received a bond hearing, as described above. This was the situation in petitioner's first habeas petition.

Though the situation presented in petitioner's second habeas petition—a due process challenge after a petitioner who is mandatorily detained pursuant to § 1226(c) has already received a bond hearing before an immigration judge—is less common, multiple courts have addressed similar claims, finding substantive due process violations for individuals like petitioner who have been detained for extensive periods. See Doe v. Becerra, 732 F. Supp. 3d 1071 (N.D. Cal. 2024) (finding substantive due process violation where petitioner received bond hearing and was detained over 30 months; and providing government with opportunity to propose appropriate remedy); Doe v. Chestnut, 810 F. Supp. 3d 1169, 1177 (E.D. Cal. 2025) (ordering immediate release for substantive due process violation where petitioner received bond hearing and was detained for 54 months); Andres A.B. v. Warden of California City, No. 1:26-cv-01707-TLN-EFB, 2026 WL 2606841 (E.D. Cal. Sept. 3, 2026) (ordering release for substantive due process violation where petitioner received bond hearing and was detained for over 28 months; and requiring parties to submit joint proposed conditions of release); but see Romero-Romero v. Wofford, No. 1:24-CV-00944-SKO, 2025 WL 391861, at *4-5 (E.D. Cal. Feb. 4, 2025), report

and recommendation adopted as modified, No. 1:24-CV-00944 JLT SKO, 2025 WL 3154399 (E.D. Cal. Nov. 12, 2025) (denying substantive due process claim where petitioner received bond hearing and was detained 27 months).

Court have used different tests to analyze prolonged detention claims after a bond hearing is held, including a five-factor test from Doe v. Becerra, 732 F. Supp. 3d 1071; a three-factor test from Mathews v. Eldridge, 424 U.S. 319 (1976); and a three-factor test from Espinoza v. Wofford, No. 1:24-CV-01118-SAB, 2025 WL 1556590, at *11-12 (E.D. Cal. June 2, 2025).[4] The Court conducts an individualized analysis of petitioner's substantive due process claim, which addresses various factors that have been identified in these different tests without adopting or applying a singular test.[5]

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

"[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715,

---

[4] The Espinoza substantive due process analysis has been described by another judge in this district as a modified Doe v. Becerra, 732 F. Supp. 3d 1071 (N.D. Cal. 2024) test. See Shafaq v. Warden, No. 1:26-CV-00299 JLT SKO, 2026 WL 1785249, at *5 (E.D. Cal. June 22, 2026) (adopting three-factor test from Espinoza to analyze substantive due process claim challenging prolonged detention of petitioner detained pursuant to 8 U.S.C. § 1225(b)(1) where petitioner was apprehended upon entry into the United States, was detained, and has been continually detained for 21-months; denying petition).

[5] For example, courts disagree on whether alternatives to detention should be considered and how conditions of confinement should be analyzed in evaluating a substantive due process claim like this one. Compare Doe v. Becerra, 732 F. Supp. 3d at 1080, with Espinoza v. Wofford, ]2025 WL 1556590, at *9.

738 (1972). Substantive process prohibits detention if it "becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 747 (1987)). In the immigration context, "[d]ue process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." Padilla v. ICE, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (citing Zadvydas, 533 U.S. at 690-91).

After careful consideration, the Court concludes that petitioner's continued detention no longer bears a reasonable relationship to its regulatory purpose while recognizing that courts, including within this district, are split on this complicated issue.

Petitioner has been in continuous immigration detention for almost three years since October 2023. (ECF No. 1 at 7.) In October 2023, Petitioner was released on parole after the California Board of Parole Hearings found that petitioner did not pose a risk of danger to society having served 33 years of his criminal sentence. (Id.) Petitioner was taken into immigration custody October 2023 after his release from state custody, and has been in continuous immigration detention since. (Id.)

The Court agrees with petitioner that his detention has been prolonged for reasons beyond his control as he pursued relief. (See ECF No. 8 at 5 (citing German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 211 (3d Cir. 2020) (declining to "hold a [noncitizen's] good-faith challenges to his removal against him, even if his appeals or applications for relief have drawn out the proceedings"); Masood v. Barr, No. 19-cv-7623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2022) (finding that it "ill suits the United States to suggest that [petitioner] could shorten his detention by giving up" defenses to removal).) After being taken into immigration custody and charged with removability, petitioner began applying for different forms of relief in November 2023, including a pro se application in January 2024 for deferral of removal under the Convention Against Torture. (ECF Nos. 1-10 at 3, 1-15 at 22.)

Unfortunately, errors by both the immigration judge and the Board of Immigration

Appeals contributed to petitioner's prolonged detention. First, in February 2024, the immigration judge denied petitioner's CAT application and ordered petitioner's removal to El Salvador. (ECF No. 1-10.) Petitioner appealed the immigration judge's decision to the BIA, which granted petitioner's appeal in June 2024, concluding that the immigration judge failed to make factual findings regarding the 2022 State Department country report for El Salvador, failed to adequately explain why the immigration judge would not consider Dr. Patrick McNamara's report an expert report, and where the immigration judge discounted Dr. McNamara's report on an improper basis, remanding to the immigration judge to make additional findings of fact. See Parada Calderon v. Blanche, 2026 WL 2543389, at *3;( ECF No. 1 at 12; ECF No. 1-11 at 4-5). In June 2024, the immigration judge issued a new decision, again denying petitioner's application for relief and ordering him removed to El Salvador. (ECF No. 1-12.) On November 22, 2024, the BIA dismissed petitioner's second appeal. Petitioner filed a timely petition for review of the BIA's November 22, 2024 decision, which remains pending before the Ninth Circuit Court of Appeals. (See ECF No. 1-17.)

Second, petitioner filed a motion to reopen his removal proceedings before the BIA, which the BIA denied in March 2025. (ECF No. 1-14.) Petitioner filed a timely petition for review of the BIA's denial of reopening before the Ninth Circuit. On August 28, 2026, the Ninth Circuit recently granted the petition, finding that "[t]he BIA committed two clear legal errors in its denial of Parada's motion to reopen", as described in more detail above. See Parada Calderon v. Blanche, 2026 WL 2543389, at *2. The Ninth Circuit held: "[u]nder the correct legal standards, the record evidence compels the conclusion that Parada met the burden of showing that he has a 'reasonable likelihood of [succeeding] on the merits' of his [CAT] application in a reopened proceeding." Id. at *2 (quoting Fonseca Fonseca, 76 F.4th at 1181). The Ninth Circuit remanded to the BIA with instructions to grant petitioner's motion to reopen and to conduct a full merits hearing on petitioner's CAT application. Id. at *14.

While the Court does not disagree that much earlier, petitioner's immigration detention was reasonably related to the legitimate purpose of his immigration detention to effectual removal and/or protecting against danger or flight risk. But at this point, that period has passed where

petitioner has been detained for almost three years[6] and where the Ninth Circuit has held that petitioner has a reasonable likelihood of succeeding on the merits of his CAT application, and has remanded to the BIA with instructions to grant petitioner's motion to reopen and to conduct a full merits hearing on petitioner's CAT application. In addition, petitioner faces continued prolonged detention during his removal proceedings before the BIA and further potential judicial review. Petitioner's continued detention no longer bears a reasonable relationship to its regulatory purpose, and continuing to detain him therefore becomes punitive, in violation of substantive due process. The Court therefore recommends granting the petition and ordering petitioner's immediate release. Petitioner's release, however, should be delayed to provide the opportunity to address proposed release conditions. As other courts have done in a similar context, the Court believes it appropriate to provide the parties with the opportunity to address and propose release conditions. See Andres A.B, 2026 WL 2606841, at *7-8; Doe v. Becerra, 732 F. Supp. 3d at 1090-91.

**V. CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's motion for the district judge to retain jurisdiction over the petition (ECF No. 19) is DENIED as moot.
2. By close of business on September 28, 2026, the parties must meet and confer, and file a joint statement with proposed release conditions for the district judge's consideration. The submission of proposed release conditions by the government will not be interpreted as agreement with or non-opposition to these findings and recommendations, which the government may separately submit as indicated below.

IT IS HEREBY RECOMMENDED that:

1. Respondents' motion to dismiss (ECF No. 7) be DENIED.
2. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

---

[6] Petitioner has submitted a thorough petition and briefing, including extensive records from his immigration proceedings and his declaration describing conditions of confinement. (See ECF No. 1 and exhibits; ECF No. at 8.)

3. Respondents be ordered to IMMEDIATELY release petitioner Alfredo Parada Calderon (A-092-078-794), upon conditions to be determined by the district judge after the parties submit their proposed release conditions. Respondents shall be prepared to release petitioner within 12 hours after submission of the joint statement of proposed conditions, or as soon thereafter as ordered by the district judge.
4. Respondents be ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with statutory and constitutional protections.
5. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven days** after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 18, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

csk/para2252.2241.imm/9